# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GWO CHING LIOU,

    Plaintiff,

v.

LEXISNEXIS RISK SOLUTIONS, INC.,

    Defendant.

Case No.: 2:20-cv-00982-KJD-NJK

**REPORT AND RECOMMENDATION**

[Docket No. 19]

Pending before the Court is Defendant's motion to enforce settlement. Docket No. 19. The Court has considered Defendant's motion, Plaintiff's response, and Defendant's reply. Docket Nos. 19, 22, 26. The motion is properly resolved without a hearing. *See* Local Rule 78-1.

**I.  BACKGROUND**

On or about August 31, 2020, Plaintiff's former counsel, Kevin Hernandez, and Defendant's counsel, Gary Schnitzer, began settlement negotiations. Docket No. 19 at 2. On September 7, 2020, Mr. Hernandez, emailed Mr. Schnitzer stating that he had discussed the proposed offer of $14,000 and permanent credit correction with Plaintiff and that he had "authority to resolve the case on those terms." Docket No. 19-1 at 2. Mr. Hernandez asked Mr. Schnitzer to "[p]lease advise if we have a settlement." *Id.* On September 8, 2020, Mr. Schnitzer responded, "Yes we have a deal." *Id.*

On September 11, 2020, Mr. Schnitzer's assistant emailed Mr. Hernandez a draft settlement agreement. Docket No. 22-6. Shortly after receiving the draft settlement agreement, Mr. Hernandez emailed Mr. Schnitzer a revised version of the draft settlement agreement with his edits. Docket No. 19-2.

On October 5, 2020, Mr. Hernandez emailed Mr. Schnitzer a second revised settlement agreement. Docket No. 19-3. This revised settlement agreement, *inter alia*, added a liquidated damages clause, deleted the denial of admission and confidentiality clauses, and edited the release

of liability clause. *Id.* at 4–7.  On October 16, 2020, Defendant's counsel Jim McCabe emailed Mr. Hernandez a revised version of the settlement agreement, which deleted the liquidated damages clause, reinstated the denial of admission and confidentiality clauses, and further edited the release of liability clause.  Docket No. 19-4.  On November 17, 2020, Mr. Hernandez emailed Defendant's attorneys, stating that the parties were at an impasse and that Plaintiff wished to move forward with litigation.  Docket No. 19-5 at 2.  During a telephone call on November 18, 2020, Defendant offered to prepare a new settlement agreement that met some of Plaintiff's requests. Docket No. 19 at 3.  On December 11, 2020, Defendant sent Plaintiff a further revised settlement agreement, but never heard back from Mr. Hernandez.  *Id.*

On December 17, 2020, the Court granted Plaintiff's stipulation substituting Holland & Hart LLP as counsel in place of Mr. Hernandez.  Docket Nos. 16, 17.  Plaintiff's newly retained counsel and Defendant's counsel discussed the possibility of filing a stipulation to extend discovery deadlines.  Docket No. 22 at 8–9.  On January 4, 2021, Defendant's attorneys emailed Plaintiff's counsel, stating that they believed a settlement had already been reached and, therefore, did not consent to an extension of discovery deadlines.  Docket No. 19-8 at 2.  Defendant's counsel emailed Plaintiff's counsel a draft settlement agreement that included the settlement amount and permanent credit correction terms Plaintiff requested in exchange for dismissing the instant case with prejudice and did not include the confidentiality, denial of admission, and release of liability clauses.  *See* Docket No. 19-8 at 3–4.  Plaintiff's counsel denied that a settlement had been reached. Docket No. 19-9 at 2.  On January 15, 2021, Defendant filed the instant motion seeking to enforce settlement.  Docket No. 19.

## II.  LEGAL STANDARD

A district court has the inherent power to enforce a settlement agreement entered into while the litigation is pending before it.  *In re City of Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1995); *see also Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).  A settlement agreement must meet two requirements to be enforced.  *Fernandez v. Nevada*, 2012 WL 960907, at *1 (D. Nev. Feb. 9, 2012).  All parties or their authorized attorneys must agree to the terms of the settlement, and the settlement agreement must be a complete agreement.  *Id.*

## III. ANALYSIS

Defendant submits that the parties reached a settlement agreement in this case. Docket No. 19 at 2. Specifically, Defendant submits that the parties reached a settlement agreement when Mr. Hernandez emailed Defendant's counsel that Plaintiff had agreed to settle this case for $14,000 and a permanent credit correction, and Defendant's counsel responded to Mr. Hernandez's email accepting these terms. *Id.* at 4–5. Defendant further submits that Plaintiff has breached the implied covenant of good faith and fair dealing by refusing to acknowledge that the parties have reached an agreement to settle this case. *Id.* at 5.

In response, Plaintiff submits that Mr. Hernandez's emails with Defendant's attorneys were preliminary negotiations that did not create an enforceable settlement agreement. Docket No. 22 at 13–21. Plaintiff further submits that Defendant instead made a counteroffer when it emailed Mr. Hernandez a settlement agreement that contained additional terms and omitted the permanent credit correction term. *Id.* at 15–16. In addition, Plaintiff submits that the parties' continued revisions to the settlement agreement demonstrate that the parties did not reach a settlement agreement. *Id.* at 13–14. Plaintiff submits that the parties continue to disagree on material terms, such as the scope of the waiver and release terms and the scope of admissions and denials. *Id.* 18–21. Plaintiff submits that it is entitled to an evidentiary hearing should the Court find that any factual disputes exist as to the existence or terms of a settlement agreement. *Id.* at 21.

In reply, Defendant submits that the parties' continued revisions to the settlement agreement concern collateral, not material, terms. Docket No. 26 at 2–4. Defendant further submits that, in any event, the parties' ongoing discussions on these collateral terms do not negate the parties' original agreement to settle this case for $14,000 and permanent credit correction. *Id.* at 6. Defendant also submits that an evidentiary hearing is not necessary because "[t]he emails exchanged in arriving at a settlement are clear and unambiguous." *Id.*

The Court finds that the parties have entered into an enforceable settlement agreement. "An agreement to settle a legal dispute is a contract and its enforceability is governed by . . . principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). Under Nevada law, "[f]or a contract to be enforceable, basic

3

contract principles require an offer and acceptance, meeting of the minds, and consideration." *Sembach v. Club One*, 2012 WL 6962233, at *3 (D. Nev. Dec. 3, 2012) (citing *May v. Anderson*, 121 Nev. 668, 672 (2005)).  Here, Mr. Hernandez specifically stated that Plaintiff had authorized him to settle this case for $14,000 and permanent credit correction. Docket No. 19-1 at 2. Plaintiff invited Defendant to accept her offer, asking Defendant to "[p]lease advise if we have a settlement." *Id.*  Defendant promptly accepted by responding, "Yes we have a deal." *Id.*  These communications clearly demonstrate the existence of an offer, acceptance, meeting of the minds, and consideration.

The Court further finds that the parties' emails were not mere preliminary negotiations. The parties' agreement was not conditioned upon additional terms. *Cf. Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 315 (9th Cir. 1996) ("An agreement to make an agreement, without more, is not a binding contract").  Further, Defendant's omission of the permanent credit correction term in its initial draft settlement agreement did not negate the existence of an enforceable settlement agreement; rather, it appears to have been a mistaken omission as Defendant did not dispute that it should be included.  *See Drescher v. Baby It's You, LLC*, 2011 WL 13142639, at *5 (D. Nev. Dec. 21, 2011) (citing *Jeff D.*, 899 F.2d at 759) ("[C]ourts construe settlement agreements in favor of enforcement"); *see also Pyle v. Wolf Corp.*, 354 F. Supp. 346, 356 (D. Or. 1972) (finding that failure to include material term in draft agreement was a mere oversight and did not preclude formation of a contract, where neither party disputed the term).  The parties' emails and intent manifested therefrom demonstrate that Plaintiff and Defendant agreed to enter into a settlement agreement whereby Plaintiff would dismiss this case in exchange for $14,000 and permanent credit correction.  *See Johnston v. Int'l Mixed Martial Arts Fed'n*, 2015 WL 273619, at *3 (D. Nev. Jan. 22, 2015) ("Essential to the creating of a contract, whether express or implied, is a manifestation, by the parties, of an intent to contract").

The Court further finds that the parties' settlement agreement is a complete agreement.  In determining whether a settlement agreement is complete, the key inquiry is whether the parties agreed to all material terms upon entering into the settlement agreement. *First 100, LLC v. Omni Fin, LLC*, 2016 WL 2980673, at *12 (D. Nev. May 23, 2016).  Whether the parties agreed to all

4

material terms upon entering into the settlement agreement is a fact-intensive inquiry that "depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 378 (2012) (quoting Restatement (Second) of Contracts § 131 cmt. g (1981)). Generally, communications with respect to the terms of a settlement agreement following an agreement to settle may suggest that the parties did not agree to all material terms upon entering into a settlement agreement. *First 100, LLC*, 2016 WL 2980673, at *12. In this case, the parties exchanged revised drafts of the settlement agreement after they agreed to settle. The draft settlement agreement Defendant emailed to Plaintiff on January 4, 2021, however, includes only the material terms that the parties agreed upon. *See* Docket No. 19-10 at 35. *See May*, 121 Nev. at 671 ("A contract can be formed, however, when the parties have agreed to the material terms, even though the contract's language is not finalized until later").

When material facts are disputed, the parties are entitled to an evidentiary hearing. *Callie*, 829 F.2d at 890. "The Court has discretion to hold an evidentiary hearing if neither party requests one or indicates that a hearing is necessary to settle disputed material facts." *Goldberger v. SmartCare OS, LLC*, 2018 WL 2376571, at *2 (D. Nev. Apr. 20, 2018). Although Plaintiff has requested an evidentiary hearing, the Court finds that the material terms of the agreement were clearly stated in the email exchange between counsel. The proposed settlement agreement Defendant emailed to Plaintiff on January 4, 2021, includes only those material terms. The undersigned therefore finds that a hearing is unnecessary.

**IV.   CONCLUSION**

Accordingly, **IT IS RECOMMENDED** that Defendant's motion to enforce settlement, Docket No. 19, be **GRANTED**.

Dated: February 10, 2021

_____
Nancy J. Koppe
United States Magistrate Judge

5

## **NOTICE**

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).